693 F.2d 1023
 Fed. Sec. L. Rep. P 99,022
Margaret K. BELKE, Plaintiff-Appellee,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, Frank Utermehle,
Nobert Fisher, Edward C. Weizer, G. William Rolls
and Leigh Rolls, Defendants-Appellants.
 No. 81-6055.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 13, 1982.
 
 Bennett Falk, Walton Lantaff Schroeder & Carson, Miami, Fla., for Merrill Lynch, Utermehle, Fisher and Weizer.
 Lewis N. Brown, Gilbride & Heller, P.A., Miami, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, KRAVITCH and HATCHETT, Circuit Judges.
 KRAVITCH, Circuit Judge:
 
 
 1
 This case presents the question whether the district court correctly held that appellant waived its right to arbitrate by failing to move for arbitration at the outset of the litigation, despite the fact that at that time counsel for appellant considered such a motion futile. Finding that severance was impossible at the commencement of litigation because the claims were inextricably intertwined, that a motion for arbitration at the start of the litigation would have been futile, and that Merrill Lynch promptly filed for arbitration when the nonarbitrable claims were dismissed, we reverse. 518 F.Supp. 602.
 
 I.
 
 2
 Margaret K. Belke (Belke) sued Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) and various other defendants alleging mismanagement of Belke's stock portfolio in violation of federal securities laws, stock exchange rules and regulations, and the common law of the State of Florida. All counts shared a common nucleus of operative facts set forth initially in paragraphs 1-34 of the complaint and incorporated by reference in all other counts. A determination of the issue of scienter was central to all claims against defendant Merrill Lynch, although there were various other common questions of fact as well.[1]
 
 
 3
 Belke filed her first discovery requests simultaneously with the complaint. Merrill Lynch answered and began its own discovery. Discovery continued for over a year, at which time Belke amended her complaint to allege diversity jurisdiction in support of her pendent state claims. A month later, on January 25, 1978, Merrill Lynch moved for partial summary judgment alleging that Belke's federal claims were time-barred. On June 14, 1979 the trial judge granted Merrill Lynch's motion, thereby eliminating all federal claims. On October 9, 1979 the district court denied plaintiff's motion for reconsideration of the grant of summary judgment, but allowed Belke to restate two counts of her complaint. Before responding to the amended complaint Merrill Lynch moved, on November 1, 1979, to compel arbitration of the remaining state common law claims, and for a stay of the action in federal court pending arbitration.
 
 
 4
 The district court denied appellant's motion for arbitration and a stay, holding that Merrill Lynch waived its right to arbitration by not raising the issue at the commencement of the litigation. Acknowledging that arbitration might have been impossible at the outset if arbitrable and nonarbitrable claims were "inextricably intertwined," the district court declined to discuss the "technicalities" of impossibility, or to determine whether severance would have been impossible in the case before it. Rather, the court stated that "[t]he correct thing for defendant to have done was to preserve its right to arbitrate early in the suit .... It is not for the litigant to decide that had an earlier motion to arbitrate been made it would surely have been denied and thus was a futile gesture."
 
 
 5
 Merrill Lynch appeals this denial of arbitration, arguing it did not waive arbitration as its request for arbitration was timely made. It is appellant's position that the law does not require the "futile gesture" of filing for arbitration before claims become arbitrable, and that delay in filing should be measured from the time of arbitrability. We agree.[2]
 
 
 6
 Federal law evinces a clear preference for arbitration over litigation for private dispute resolution. Seaboard Coast Line Railroad Company, Inc. v. Trailer Train Company, 690 F.2d 1343, 1348 (11th Cir.1982); Ultracashmere House, Ltd. v. Meyer, 664 F.2d 1176, 1179-1180 (11th Cir.1981); Seaboard Coast Line Railroad Company v. National Rail Passenger Corp., 554 F.2d 657, 660 (5th Cir.1977).[3] Arbitration provides a speedier and less costly method of dispute resolution than does litigation, while relieving congested federal court dockets. Id. Because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof. Sibley v. Tandy Corp., 543 F.2d 540, 542 (5th Cir.1976), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); General Guaranty Insurance Co. v. New Orleans General Agency, Inc., 427 F.2d 924, 929 n.5 (5th Cir.1970).
 
 
 7
 In this case Belke plead both Florida common law claims and federal securities law claims. On the face of the complaint, the Florida common law counts are subject to arbitration under the terms of a contract between the parties.[4] Federal securities claims, however, are not arbitrable. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Sawyer v. Raymond James & Associates, Inc., 642 F.2d 791, 792 (5th Cir.1981); Sibley v. Tandy Corp., supra, 543 F.2d at 543. Thus, the district court was faced with a case involving claims both arbitrable and nonarbitrable.
 
 
 8
 Generally, when a complaint sets forth a combination of claims the arbitrable claims should be severed from the nonarbitrable ones and the district court should stay judicial proceedings as to the arbitrable claims, thereby allowing arbitration to proceed. Wick v. Atlantic Marine, Inc., 605 F.2d 166, 168 (5th Cir.1979). An exception to this rule exists, however, when the arbitrable and nonarbitrable claims are so related that severance is "impractical if not impossible." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1172 (11th Cir.1982); Sawyer, supra, 642 F.2d at 793; Sibley v. Tandy Corp., supra, 543 F.2d at 543. When arbitrable and nonarbitrable claims are "inextricably intertwined," the rule in this circuit is that the district court should deny arbitration as to the arbitrable claims in order to protect the jurisdiction of the federal court and avoid any possible preclusive effect. Id.[5]
 
 
 9
 Our decisions in cases presenting mixed federal securities claims and arbitrable common law claims make it clear that "factual severability of the disputed claims is of central importance. If '[a]n arbitrator making a decision on the [arbitrable] claims would have been impelled to review the same facts needed to establish the plaintiff's securities law claim,' a district court should not sever the arbitrable claims." Sawyer, supra, 642 F.2d at 733; Sibley v. Tandy Corp., supra, 543 F.2d at 542. In the instant case counsel for Merrill Lynch examined the complaint filed by appellee and decided, based on the governing law of this circuit, that a motion for arbitration would have been denied because the claims were not severable. Therefore, Merrill Lynch waited until the nonarbitrable claims were dismissed before filing its motion for arbitration. The district court, however, refused to consider whether the initial determination by counsel for appellant was correct. Instead it held that Merrill Lynch had no choice but to file a motion, albeit one it believed futile, so that the district court could make the determination as to severability at the outset of the litigation.
 
 
 10
 The district court is correct that it has the right to decide whether plaintiff's arbitrable and nonarbitrable claims are severable. Indeed, the district court is obligated to make this determination. See Sawyer v. Raymond James & Associates, Inc., 642 F.2d 791, 793 (5th Cir.1981) (district court should apply case-by-case test to determine factual severability of claims); Sibley v. Tandy Corp., 543 F.2d 540, 544 (5th Cir.1976) (severance required under Federal Arbitration Act when claims not intertwined), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). In the case before us the district court committed error specifically by refusing to address this threshold determination prior to holding Merrill Lynch in default.
 
 
 11
 Without examining whether the claims were severable, and thus arbitrable, when litigation commenced, the district court held Merrill Lynch in default because of its delay in moving to compel arbitration. We do not agree, however, that there would be delay in proceeding with arbitration if the arbitrable claims were not severable until shortly before Merrill Lynch requested arbitration. See Haydu, supra, 675 F.2d at 1172 (court may not sever arbitrable claims and allow arbitration if arbitrable and nonarbitrable claims inextricably intertwined); Sawyer, supra at 793 (same). Had Merrill Lynch moved to compel arbitration at the commencement of litigation the district court would have denied the motion unless it determined the claims were severable. The considered judgment of counsel for Merrill Lynch was that Belke's claims were not severable, and that until such time as the nonarbitrable federal claims were dismissed a motion for arbitration would be futile.
 
 
 12
 We emphasize the district court's ultimate authority as to a determination of severability. Counsel for Merrill Lynch took a clear risk in declining to file the arbitration motion at the outset of litigation. If upon the later filing for arbitration the district court had held the claims severable at the outset, the district court properly could have found Merrill Lynch in default as to its right to arbitrate. If Merrill Lynch was correct in its initial determination that the claims were not severable, however, and the motion for arbitration was timely made once the nonarbitrable claims were extinguished, it would be inappropriate to penalize Merrill Lynch for failing to file a futile motion. We therefore hold that prior to determining that a defendant is in default for failing to file a motion for arbitration at the commencement of litigation, the district court first must determine first whether an earlier motion would have been futile, and second, whether the claim for arbitration was timely made when filed.
 
 
 13
 In this case we need not remand for further consideration as the record is developed fully on both issues. In the interest of judicial economy we have examined the record and determine that Merrill Lynch did not waive its right to compel arbitration. Belke's common law and federal claims all allege knowing or negligent misconduct (scienter) on the part of Merrill Lynch. In Sawyer v. Raymond James & Associates, 642 F.2d 79 (5th Cir.1981) we held that the mixture of asserted securities and common law claims were not severable. As in Sawyer, we deal here with "a single recitation of facts, revealing an emphasis upon the element of scienter, giving rise to numerous federal and common law claims." Id. at 793 (citation omitted). Because we believe an arbitrator attempting to evaluate non-federal claims at the outset of this litigation would have been "impelled to review the same facts," id., as presented to the district court on the securities claims, we find that a motion to compel arbitration at the outset of this litigation, prior to dismissal of the federal claims, would have been futile. We further observe that Merrill Lynch filed its motion to compel arbitration and stay proceedings three weeks after the district court finally determined that the federal securities counts were time-barred. A motion filed three weeks after the claims actually become arbitrable is timely made. Accordingly, we hold Merrill Lynch has not waived its right to compel arbitration.
 
 II.
 
 14
 Belke raises two further issues on appeal that survive resolution of the primary issue.[6] First, she argues that even if arbitration is appropriate Merrill Lynch committed procedural default by failing to serve written notice of the intent to arbitrate "within one year after the cause of action accrued," as required by the governing contract. Recent arbitration decisions hold that procedural questions such as the timeliness of a request for arbitration under the arbitration agreement are to be resolved by the arbitrator unless the contract expressly provides for resolution by the district court. O'Neel v. National Association of Securities Dealers, 667 F.2d 804, 807 (9th Cir.1982); Conticommodity Services Inc. v. Philipp & Lion, 613 F.2d 1222 (2d Cir.1980). The Second Circuit explained in Conticommodity Services Inc. that:
 
 
 15
 a court could determine only those questions of delay that relate to the two issues it is required to decide under section 4 of the [Federal Arbitration] Act--the making of an arbitration agreement and the failure, refusal, or neglect to arbitrate. "If one of these issues is disputed before the court, and if one party claims that its ability to present proof in relation thereto has been prejudiced through the delay of the other, the court may consider whether it is fair to permit the dilatory party even to invoke its processes under the Act." Any other questions of delay, unless expressly reserved for court determination by the arbitration agreement, were properly left "to the expertise of the arbitrators." Id. at 1226 (citations omitted) (emphasis supplied).
 
 
 16
 We agree with the reasoning of the Second Circuit. In this case the district court and this Court have addressed the question of whether it is fair to permit Merrill Lynch to invoke its processes under the Federal Arbitration Act. Id. Having determined that they may do so we hold the issue of whether a request for arbitration is timely under the terms of the contract to be an issue properly resolved by the arbitrator.
 
 
 17
 Finally, appellee argues that because certain acts complained of occurred prior to execution of the arbitration agreement those claims are not properly disposed of by submission to an arbitrator. Again, we disagree. By its own terms the contract between the parties covers not only disputes arising out of the agreement, but in the disjunctive includes "any controversy between us arising out of your business." (emphasis supplied). An arbitration clause covering disputes arising out of the contract or business between the parties evinces a clear intent to cover more than just those matters set forth in the contract. See Seaboard Coast Line Railroad v. Trailer Train Company, supra, at 1348 (scope of arbitration clause question of intent of contracting parties).
 
 
 18
 Finding appellees' claims without merit, we remand for proceedings in the district court not inconsistent with this opinion. REVERSED.
 
 
 
 [1]
 For example, based on the facts alleged in the complaint, the propriety of management of the Belke portfolio and the degree of care exercised by defendants in managing the Belke funds commensurate with Belke's stated portfolio goals were also at issue
 
 
 [2]
 The district court recognized that delay alone is insufficient to constitute waiver, but found attendant prejudice resulting from appellant's invocation of the discovery mechanism prior to the motion for partial summary judgment. Because we hold there was not delay on the part of Merrill Lynch in filing for arbitration, we need not address the issue of prejudice. There was no delay, therefore there could be no prejudice
 
 
 [3]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [4]
 The Customer Agreement in force between Merrill Lynch and Belke requires arbitration in accordance with the terms set forth below:
 It is agreed that any controversy between us arising out of your business or this agreement, shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, except however if the controversy involves any security or commodity transaction or contract relating thereto executed on an exchange located outside of the United States then such controversy, at the election of either of us, shall be submitted to arbitration conducted under the constitution and rules of such exchange (and if neither of us so elects, arbitration shall be conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange). Arbitration must be commenced within one year after the cause of action accrued by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, naming therein the arbitration tribunal.
 
 
 [5]
 The doctrine of intertwining is not the rule in every circuit. See Dickinson v. Heinold Securities, Inc., 661 F.2d 638 (7th Cir.1981) for the views of a Seventh Circuit panel rejecting the Fifth Circuit rule
 
 
 [6]
 Appellee failed to raise either of these two final issues in the court below. Because they are answered easily, we address them here in the interest of judicial economy