559 F.Supp. 388 (1983)
Roger A. SURMAN and Kathleen M. Surman, Plaintiffs,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and David Richard Wulf, Defendants.
No. 82-1199C(A).
United States District Court, E.D. Missouri, E.D.
March 9, 1983.
Robert H. Kubie, St. Louis, Mo., for plaintiffs.
John J. Cole, Edwin L. Noel, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
HARPER, District Judge.
This matter is before the Court on defendants' motion to compel arbitration of *389 Counts III and IV of plaintiff's complaint, and to stay arbitration of those counts pending judicial resolution of Counts I and II. The defendants in this action are Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter referred to as Merrill Lynch), and David Wulf, an account executive in Merrill Lynch's St. Louis office.
The action arises from a series of stock transactions conducted by the defendants on behalf of the plaintiffs, Roger and Kathleen Surman, from December 1, 1979, through December 31, 1980. To obtain the services of defendants as stockbrokers the Surmans signed three separate agreements with Merrill Lynch. The first was a standard broker-investor agreement; the second was a standard option agreement governing the trading of options; and the third was a commodity account agreement. Each agreement contained a clause stating that any dispute arising between the parties would be submitted to arbitration.[1]
The Surmans brought a complaint before this Court on July 28, 1982. The complaint contained four counts. The first count was an action for damages based upon § 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated under that act by the Securities and Exchange Commission. Count II incorporated the same allegations, but based the claim for relief on 409 Mo.St. § 411, the Missouri Uniform Securities Act. Counts III and IV again incorporated the allegations set out in Count I, basing the claim for relief on the common law definition of fraud. In Count III, the plaintiffs asked the Court to award actual damages; in Count IV, the plaintiffs sought both actual and punitive damages. The gravamen of each count is that Merrill Lynch and its agent, Wulf, acted intentionally through misrepresentation to defraud the plaintiffs by entering into a series of unjustifiable high-risk stock transactions.
On September 10, 1982, the defendants brought a motion before the Court to compel arbitration of Counts III and IV, the common law counts, and to stay arbitration of those counts pending the Court's resolution of Counts I and II, the counts based on federal and state securities law. By compelling arbitration of the common law counts, Merrill Lynch asserts, the Court will honor both the strong federal policy in favor of arbitration, and the defendant's contractual right to compel arbitration, based on the arbitration clauses contained in its agreements with the plaintiffs. In response, the plaintiffs assert that the arbitration clauses should not be enforceable because the agreements are contracts of adhesion, form agreements proffered by Merrill Lynch to the plaintiffs on a "take-it-or-leave-it" basis.
Counts I and II of the plaintiffs' complaint are not subject to arbitration. In Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that an investor cannot waive his right to have a judicial forum hear claims based upon the Securities Act. Nor can an investor waive his right to seek either legal or equitable relief under the Missouri Securities Act. 409 Mo.Stat. § 411(g). Counts III and IV, the common law fraud counts, are, however, subject to arbitration under the Federal Arbitration Act, which provides in part, 9 U.S.C. § 2:
"A written provision in * * * any contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract."
*390 In ruling upon the defendants' motion to compel arbitration this Court must decide whether the joinder of plaintiffs' non-arbitrable claims with their arbitrable claims precludes arbitration. The joinder of the claims by the plaintiffs does not affect the power of this Court to sever them, and compel arbitration of the common law counts. Dickinson v. Heinhold Securities, Inc., 661 F.2d 638 (C.A.7, 1981). It is also within the Court's power to deny arbitration and hear all of the claims together. Of central importance to the Court's determination is the severability of the facts upon which the two sets of claims rest. Sawyer v. Raymond, James & Associates, Inc., 642 F.2d 791, 792 (C.A.5, 1981). A motion to compel arbitration should be denied if the common law claims and the statutory claims rest on a single set of facts. Id., Merrill Lynch, Pierce, Fenner & Smith v. Haydu, 675 F.2d 1169, 1172 (C.A.11, 1982); Sibley v. Tandy Corp., 543 F.2d 540, 542-43 (C.A.5, 1976). If claims resting on a single set of facts were severed, an arbitrator making a decision on the common law claims would have to consider the same set of facts reviewed by the trial court, requiring a duplication of effort by both parties to the dispute. Id.; see also Miley v. Oppenheimer & Co., 637 F.2d 318, 335-36 (C.A.5, 1981); and Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1030 (C.A.6, 1979).
The standard applied by the federal courts in determining severability is whether the facts upon which the two sets are based are so inextricably intertwined that it would be impractical, if not impossible, to separate them. Sibley v. Tandy Corp., 543 F.2d at 543. In the present action, the Court has been presented with a single set of facts to support all of the plaintiffs' claims. Each of the subsequent counts incorporates the allegations made by the plaintiffs in the first count. Each of the plaintiffs' claims is based upon an alleged unitary course of conduct by the defendants. Thus, the complaint here is similar to the complaint brought in Sawyer, supra. The Fifth Circuit in Sawyer upheld a federal district court's refusal to sever, for purposes of arbitration, statutory fraud claims from common law fraud claims, at page 793.
Because the Surmans' common law fraud claims are tied so closely to the factual allegations supporting their securities law claims, the motion by Merrill Lynch to compel arbitration, and for a stay, will be denied. The decision of this Court to deny arbitration does not reflect the merits of plaintiffs' claims, or suggest that the defendants may not have valid defenses to those claims. Since the motion to compel arbitration is denied, it is not necessary for this Court to address plaintiffs' contention that the arbitration clauses are void.
NOTES
[1] The arbitration clause in the standard investor-broker agreement reads, in part, as follows:

"It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration * *."
The arbitration clause in the standard option trading agreement reads, in part, as follows:
"Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only * * *."
The arbitration clause in the commodity account agreement reads, in part, as follows:
"Any controversy arising out of or relating to my account, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration * * *."