*Hallmark Industries, L.L.C. v. First Systech International, Inc.*

When several claims arising from multiple, related contracts are intertwined, with some subject to arbitration and others not, does the so-called "intertwining doctrine" preclude arbitration of any of the claims?

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| HALLMARK INDUSTRIES, L.L.C., an Arizona limited liability company, | ) ) ) | 2 CA-CV 2001-0186 DEPARTMENT B |
| Plaintiff/Appellant, | ) ) | O P I N I O N |
| v. | ) ) | |
| FIRST SYSTECH INTERNATIONAL, INC., a corporation; FRIEDMAN CORPORATION, a corporation, | ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20010883

Honorable Michael J. Brown, Judge

AFFIRMED

---

Law Offices of George J. Feulner, Esq.
  By George J. Feulner                                     Tucson
                                   Attorney for Plaintiff/Appellant

John E. Karow                                Scottsdale
               Attorney for Defendant/Appellee First Systech

Jennings, Strouss and Salmon, PLC
  By Gordon Lewis                                   Tucson

    and

Gray Cary Ware & Freidenrich LLP
  By Guillermo Marrero                             San Diego

P E L A N D E R, Judge.

¶1        This contractual dispute arises from plaintiff/appellant Hallmark Industries' purchase, pursuant to four separate contracts, of a computer system, including hardware, software, and related support services, from defendant/appellee First Systech International, Inc. (Systech). The trial court granted Systech's application to compel arbitration of disputes arising from three of the contracts between the parties but denied that application as to any disputes arising from the fourth contract.[1]  Hallmark appeals, contending that because the disputes arising from each contract are inextricably interrelated, the trial court should have applied the so-called "intertwining doctrine" and denied Systech's application to compel arbitration as to all four contracts.  Because we find the intertwining doctrine inapplicable and incompatible with Arizona law, we affirm.

## BACKGROUND

¶2        Within less than one month, Hallmark and Systech entered into three software, support, and license contracts and one equipment sale contract.  All four of the contracts contained arbitration clauses that state in pertinent part:

> [A]ny controversy or claim arising out of or relating to this
> Agreement or the breach thereof will be settled by arbitration before
> three arbitrators in accordance with the Rules of the American

---

[1]At some point, appellee Friedman Corporation (Friedman) acquired Systech. Although Friedman did not specifically join below in Systech's application to compel arbitration, Friedman has filed an answering brief in support of the trial court's judgment.

Arbitration Association ("AAA") then in effect, and judgement upon the award rendered by the arbitrators may be entered in any court having jurisdiction.

Hallmark and Systech representatives signed each of the three software contracts below the arbitration clauses. The equipment sale contract, however, was signed only on the front page and not on that contract's reverse side, which contained the arbitration clause.

¶3    Hallmark filed a complaint against Systech and Friedman, alleging various theories of recovery for disputes that had arisen from the four contracts. Thereafter, Systech filed an application to compel arbitration pursuant to the arbitration clauses. The trial court ordered arbitration for the disputes arising out of the three software contracts. Because the parties had not signed the reverse side of the equipment sale contract, however, the court ruled that they had not agreed to arbitrate any disputes arising from that contract.[2] Accordingly, the trial court denied Systech's application as to the equipment sale contract disputes.

¶4    The trial court denied Hallmark's subsequent motion for reconsideration and, upon finding no just reason for delay, entered a final judgment compelling arbitration of the disputes arising from the three software contracts. *See* Ariz. R. Civ. P. 54(b), 16 A.R.S., Pt. 2. This

---

[2]The trial court found no agreement to arbitrate despite the following language on the front of the equipment sale contract immediately above the contracting parties' signatures: "The terms and conditions . . . on the reverse side are part of this agreement." Based on that language, Systech argues the trial court also should have ordered the parties to arbitrate the disputes arising from the equipment contract. *Cf. Kalil Bottling Co. v. Burroughs Corp.*, 127 Ariz. 278, 281, 619 P.2d 1055, 1058 (App. 1980) (terms and conditions on reverse side of parties' contract applied regardless of how contract was characterized). Because resolution of this issue is not necessary for our determination of this case and because Systech has not filed a cross-appeal, we do not address it. *See* Ariz. R. Civ. App. P. 13(b)(3), 17B A.R.S.; *see also Bills v. Arizona State Bd. of Educ.*, 169 Ariz. 366, 369-70, 819 P.2d 952, 955-56 (App. 1991) (appellee may not raise issue attacking judgment in absence of a cross-appeal).

4

appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101. *See Southern California Edison Co. v. Peabody Western Coal Co.*, 194 Ariz. 47, ¶¶16, 18, 23, 977 P.2d 769, ¶¶16, 18, 23 (1999) (order compelling arbitration appealable if trial court certifies the order pursuant to Rule 54(b), Ariz. R. Civ. P.).

**DISCUSSION**

¶5   Hallmark contends the trial court erred in compelling arbitration of disputes arising from the three software contracts. Because those disputes are inextricably interrelated with the non-arbitrable equipment sale contract disputes, Hallmark argues, the trial court should have applied the intertwining doctrine and denied Systech's application to compel arbitration. According to Hallmark, that doctrine "requires that where, as here, several claims are 'intertwined,' with some subject to court jurisdiction and others subject to arbitration, the court should retain jurisdiction of all of them." Whether a trial court may apply the intertwining doctrine to avoid a valid arbitration agreement is an issue of first impression in Arizona. And, it is an issue of law that we review de novo. *Burnette v. Bender*, 184 Ariz. 301, 304, 908 P.2d 1086, 1089 (App. 1995).

¶6   The intertwining doctrine is an outgrowth of *Wilko v. Swan*, 346 U.S. 427, 74 S. Ct. 182, 98 L. Ed. 168 (1953), *overruled by Rodriguez De Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989). *Wilko* involved a federal securities claim under 15 U.S.C. § 77l(2). The Supreme Court concluded that that statute created a "special right . . . enforceable in any court of competent jurisdiction." *Wilko*, 346 U.S. at 431, 74 S. Ct. at 184, 98 L. Ed. at 173. And, because 15 U.S.C. § 77n precluded the waiver of any provision of the Securities Act of 1933, including 15 U.S.C. § 77l(2), the Supreme Court

5

held that an agreement to arbitrate 15 U.S.C. § 77l(2) claims was void. *Id*. at 428 n. 1, 430 n. 6, 438, 74 S. Ct. at 183 n.1, 184 n.6, 188-89, 98 L. Ed. at 172 n.1, 173 n.6, 177. Thus, the court essentially determined that 15 U.S.C. §§ 77l(2) and 77n trumped both an agreement to arbitrate securities claims and the federal arbitration act, which specifically declared arbitration agreements enforceable. *See* 9 U.S.C. §§ 2, 3.

¶7     Following *Wilko*, in cases involving both non-arbitrable federal securities claims and related, arbitrable state law claims, the Fifth, Ninth, and Eleventh Circuit Courts of Appeals adopted the intertwining doctrine.[3] *Byrd v. Dean Witter Reynolds, Inc.*, 726 F.2d 552, 554 (9th Cir. 1984), *rev'd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1026 (11th Cir. 1982); *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 335 (5th Cir. 1981). Under that doctrine, if the non-arbitrable federal securities claims and the related arbitrable claims "are so related that severance is 'impractical if not impossible,'" the court "should deny arbitration as to the arbitrable claims." *Belke*, 693 F.2d at 1026, *quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1172 (11th Cir. 1982). A primary purpose of the intertwining doctrine was to preserve the special statutory right, recognized in *Wilko*, to pursue federal securities claims in the judicial system. *Miley*, 637 F.2d at 335. In adopting the doctrine, the Fifth Circuit stated that allowing the arbitrable claims to proceed to arbitration could render that special statutory right "totally

---

[3]In contrast, the Sixth, Seventh, and Eighth Circuit Courts of Appeals have rejected the doctrine of intertwining. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S. Ct. 1238, 1240-41, 84 L. Ed. 2d 158, 163 (1985).

meaningless" because "an arbitrator could, in effect, resolve the merits of a federal securities claim during the course of arbitrating pendent state claims." *Id*.

¶8        In *Dean Witter Reynolds*, the Supreme Court reversed the Ninth Circuit's decision in *Byrd* and specifically rejected the intertwining doctrine. 470 U.S. at 217, 105 S. Ct. at 1241, 84 L. Ed. 2d at 163. Relying on 9 U.S.C. § 2, which states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," the Court concluded that the federal arbitration act conferred no discretion on trial courts to decline to enforce valid arbitration agreements. *Id*. at 218, 105 S. Ct. at 1241, 84 L. Ed. 2d at 163.

¶9        In view of that background, even assuming arguendo that a court could apply the intertwining doctrine to avoid a valid arbitration agreement, the doctrine does not apply to this case. As noted above, a primary purpose of the doctrine was to preserve a special statutory right to seek judicial relief. *Miley*, 637 F.2d at 335. Hallmark's claims do not involve any such special statutory right. Thus, Hallmark cannot avoid the force and effect of the software contracts' arbitration clauses based on the intertwining doctrine.

¶10       That conclusion is supported by three additional reasons. First, A.R.S. § 12-1501, in language virtually identical to 9 U.S.C. § 2, states:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Like the Supreme Court in the *Dean Witter Reynolds* case, we conclude that this language does not confer discretion on a trial court to ignore a valid arbitration agreement merely because a case

7

involves related arbitrable and non-arbitrable claims, even if the claims are factually related and difficult to separate.

¶11        Second, our legislature has prescribed the applicable procedure when cases involve both arbitrable and non-arbitrable claims. Section 12-1502(D), A.R.S., states:

> Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

Nothing in § 12-1502(D) permits a court to refuse to enforce an arbitration agreement. Rather, if an action or proceeding involves multiple, inseparable claims, only some of which are arbitrable, the court action must be stayed pending the arbitration. Although the phrase "[a]ny action or proceeding" is broad, the last sentence of § 12-1502(D) makes clear that the stay may only be granted in the court proceedings, as an application to compel arbitration may only be made in court. *See* § 12-1502(A) (court shall order arbitration upon party's application showing existence of arbitration agreement). Accordingly, we disagree with a Colorado case on which Hallmark relies wherein the court concluded, based on statutory language essentially identical to § 12-1502(D), that the intertwining doctrine "remains viable and must be used in determining the arbitrability of claims arising from the same facts, where one of those claims is non-arbitrable." *Lawrence Street Partners, Ltd. v. Lawrence Street Venturers*, 786 P.2d 508, 511 (Colo. Ct. App. 1989); *see also* Colo. Rev. Stat. Ann. § 13-22-204(4) (West 2002).

¶12        Third, to some extent the intertwining doctrine runs counter to Arizona law that clearly "favors arbitration, both statutorily, *see* A.R.S. § 12-1501, and by the courts as a matter

8

of public policy." *Foy v. Thorp*, 186 Ariz. 151, 153, 920 P.2d 31, 33 (App. 1996); *see also Einhorn v. Valley Medical Specialists, P.C.*, 172 Ariz. 571, 572, 838 P.2d 1332, 1333 (App. 1992). Permitting a party to avoid arbitration of disputes arising from three contracts with clear, enforceable arbitration clauses because of the alleged non-arbitrability of disputes arising from a fourth, albeit related, contract would circumvent that policy.

¶13 We acknowledge that having a court and arbitrators resolve the same factual issues is not a particularly efficient allocation of resources, may be somewhat impractical, and theoretically could lead to inconsistent results. *See generally* Anthony G. Buzbee, *When Arbitrable Claims Are Mixed with Nonarbitrable Ones: What's A Court To Do?*, 39 S. Tex. L. Rev. 663 (June 1998); B. Judson Hennington, III, *Unravelling the Intertwining Doctrine: Dean Witter Reynolds, Inc. v. Byrd*, 37 Ala. L. Rev. 457 (Winter 1986). The primary purpose of our arbitrations statutes, however, is to "validate arbitration agreements" and "make the arbitration process effective." Prefatory Note to Uniform Arbitration Act, 7 U.L.A. pt. 1 at 2 (1997); *see* Historical and Statutory Notes to § 12-1501 ("This section is similar to § 1 of the Uniform Arbitration Act."); *see also Dean Witter Reynolds Inc.*, 470 U.S. at 217, 219, 105 S. Ct. at 1241, 1242, 84 L. Ed. 2d at 163, 164 (the federal arbitration act "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums; purpose of act "was to ensure judicial enforcement of privately made agreements to arbitrate"). Any inefficiency or risk of inconsistent results is a consequence of the parties' bargaining. Under our arbitration statutes, we are required to enforce those bargains despite their potential shortcomings.

## DISPOSITION

**¶14** The trial court's judgment is affirmed. The requests of Systech and Friedman for an award of reasonable attorney's fees on appeal pursuant to A.R.S. § 12-341.01 are granted upon their compliance with Rule 21, Ariz. R. Civ. App. P., 17B A.R.S.

_____
JOHN PELANDER, Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Chief Judge


_____
JOSEPH W. HOWARD, Judge

10